UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**ANTHONY L. ROBINSON**                                                                             **PLAINTIFF**

**v.**                                                                         **CIVIL ACTION NO. 5:12CV-P45-R**

**PHILIP PARKER et al.**                                                                            **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Anthony L. Robinson, filed a *pro se*, *in forma pauperis* complaint (DN 1) and an amended complaint (DN 8). On initial review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), the Court will dismiss in part and allow to proceed in part.

*Motions*

After filing his amended complaint in compliance with this Court's Order, Plaintiff filed a motion entitled "Petition to Exclude a Relief in the Civil Complaint and to Amend or Added to" (DN 9). He states that he is "requesting to exclude the amount that the plaintiff is seeking under mental and emotional injuries due to the plaintiff is not required to do so and he should not be held or not the label given to him due to being unlearned in law." The Court interprets this motion to be one to amend his complaint to change the damages he requests, which is **GRANTED**. *See* Fed. R. Civ. P. 15(a)(1).

Plaintiff also filed a "Petition to Amend Evidence to Incorporate" (DN 10), in which he asks to submit additional evidence in support of his complaint. The Court interprets this document to be a motion to amend. Given that no responsive pleading has yet been filed and this case is still undergoing initial review, the Court finds that in the interests of justice this motion is **GRANTED**. *See* Fed. R. Civ. P. 15(a)(2).

I.

Plaintiff, who is incarcerated at the Kentucky State Penitentiary, initiated this action by filing on his own paper what he titled a "Petition for Federal Charges." He stated that he wished to file and press federal charges against Warden Philip Parker, Deputy Warden Alan Brown, and Chaplain Sheila Burnham. He alleged that these Defendants violated his Fifth, First, and Fourteenth Amendment rights. He alleged that he and his "Moorish American Brothers with the Moorish Science Temple of American Islamism Faith" have been targeted for the use of their tribal names, violating the Nationality Act and the Religious Freedom Restoration Act of 1993 (RFRA). He also alleged that racism and retaliation are taking place against them and that their Eighth Amendment rights are being violated. He asked this Court to issue an order to the Kentucky Department of Corrections (KDOC) "requesting or demanding" that he be transferred to another penitentiary because he fears for his life for filing these "charges." He also asked this Court to issue an Order recognizing certain prisoner names as containing "El" and "Bey" as part of their names because it is required that "Moorish Americans use El and Bey as a birthright as well as religious right."

In his amended complaint, Plaintiff clarifies that he is suing all three Defendants in their individual and official capacities. Plaintiff states that he brings his claims under the First, Fifth and Eighth Amendments to the United States Constitution, the Religious Land Use and Institutionalized Persons Act (RLUIPA) and RFRA. In particular, he claims that Defendants Brown and Burnham issued a disciplinary report against him causing him emotional distress and stripping him of nine months of clear conduct that could have allowed Plaintiff to be transferred closer to his sick mother. Among the attachments to his amended complaint is a KDOC

Disciplinary Report Form regarding an incident on March 16, 2012, in which Plaintiff pleaded guilty to refusing to obey an order when he signed an open records request with the title "El" after his name which is not his KDOC recognized name. Plaintiff received a "Penalty of 15 days D/S suspended for 90 days." That form states:

> We find Inmate Robinson guilty of 3-02 Refusing or failing to obey an order based on his own admission that he did sign and [sic] Open Records request with the title subfix EL-I after his name, which is not his Department of Corrections recognized Court Convicted name. He was been instructed not to sign his name in this fashion.

In his amendment to his amended complaint (DN 10), Plaintiff states that he has new evidence to support his claims. He asserts that his new evidence shows that Defendant's claim that no inmate of any religion has ever been allowed to sign in with any name other than their institutional name is false. He also states in that attachment that Defendant Brown has taken a job at another institution and that Defendant Parker is no longer warden but that he should be held liable in his individual capacity. Attached is a "Religious Services Sign-Up Sheet" dated December 2, 2011, on which the inmate name "A. Robinson, El" is entered. Also attached thereto is a memorandum signed by Defendant Burnham regarding another inmate, Demarko Berry dated January 30, 2012, and stating in pertinent part:

> The official sign-in sheet kept in the Chapel files has never allowed any inmate of any religion to sign in with any name other than their institutional name under which they were convicted. If inmate Berry has copies of sign in sheets that have any name other than the inmates conviction name, that is exactly what they are, "COPIES", which have been kept by the MST[1] in their files, for their use only.

---

[1] It appears from another attachment that "MST" refers to Moor Science Temple.

3

> Attached is a copy of the Chapel Rules which are posted in the Chapel for all inmates to read. Number 11 is highlighted and states that inmates must sign in with their institutional name only.

As relief, Plaintiff requests injunctive and monetary relief. He also seeks a transfer to another institution.

## *Claims brought on behalf of others*

As a *pro se* litigant, Plaintiff may act as his own counsel in this matter. *See* 28 U.S.C. § 1654. However, he is not authorized to represent others in federal court. *See*, *e.g.*, *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("*pro se*" means to appear for one's self; thus, one person may not appear on another person's behalf in the other's cause). Plaintiff may only assert those claims, which are personal to him. *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also Coal Operators & Assoc., Inc. v. Babbitt*, 291 F.3d 912, 915-16 (6th Cir. 2002). Thus, to the extent that Plaintiff seeks relief on behalf of other people, he lacks standing to do so. Therefore, any claim for relief on behalf of others will be dismissed as frivolous for lack of subject matter jurisdiction. *Babbitt*, 291 F.3d at 915 ("[S]tanding to sue . . . is a jurisdictional requirement.").

## *First Amendment free-exercise claim*

The First Amendment protects the free exercise of religion. Here, Plaintiff is not complaining that he is not able to practice his religion. In fact, he states that except for a few occasions when Defendant Burnham has changed Sunday school time and a couple of Friday services without notice, he attends every service. His only complaint seems to be that the prison will not let him use the "El" after his name with regard to their administrative functions, such as making a records request.

"[I]t is established in this circuit that [a prisoner] has 'no constitutional right to dictate

4

how prison officials keep their prison records.'" *Spies v. Voinovich*, 173 F.3d 398, 406 (6th Cir. 1999) (quoting *Imam Ali Abdullah Akbar v. Canney*, 634 F.2d 339, 340 (6th Cir. 1980) (per curiam)). The Sixth Circuit held in *Imam Ali Abdullah Akbar* that "the present question of name change usage relates to prison administration. Absent unusual allegations such matters are for state prison officials to resolve. Intervention by the federal courts should only be in the very unusual case." *Imam Ali Abdullah Akbar*, 634 F.2d at 340. Thus, in *Imam Ali Abdullah Akbar*, the Sixth Circuit affirmed the dismissal of the prisoner's complaint because there was no constitutional basis to require prison officials to change their records when a prisoner chooses to change his name. *Id.* Because Plaintiff's only free-exercise claim pertains to prison administrative functions involving his use of his religious name, the Court will dismiss this claim.

*Fifth Amendment claim*

The Fifth Amendment of the United States Constitution, which is part of the Bill of Rights, provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const., Amend. V.

Plaintiff fails to explain how the Fifth Amendment applies to his claims. Based on the facts as alleged by Plaintiff, the Court does not believe that Plaintiff has a cognizable Fifth

Amendment claim against Defendants in this instance. Specifically, the Court notes that, to the extent that Plaintiff is attempting to rely on the Due Process Clause of the Fifth Amendment, it circumscribes only the actions of the federal government. *See, e.g.*, *Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977). Here, the actions of state, not federal, officials are at issue, and the Court will dismiss the Fifth Amendment claims.

*Eighth Amendment claim*

The Eighth Amendment prohibits cruel and unusual punishment. "Having shown no denial of basic needs, Plaintiffs fail to state any Eighth Amendment claim." *Haight v. Thompson*, No. 5:11CV-P118-R, 2011 WL 4473143, at *2 (W.D. Ky. Sept. 26, 2011).

*Fourteenth Amendment claim*

To the extent that Plaintiff is alleging that the disciplinary hearing resulting in 15 days of segregation violated his due process rights under the Fourteenth Amendment, his claim fails. The Fourteenth Amendment's Due Process Clause protects against deprivations of life, liberty, or property without due process of law. U.S. Const. Amend. XIV; *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations omitted). "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484

(1995) (internal citations omitted).

Here, Plaintiff does not allege any state-created liberty interest, and to the extent Plaintiff intended to plead that the Due Process Clause inherently gives rise to a protected liberty interest in his freedom from administrative segregation, that argument fails as "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Id.* at 478. The Sixth Circuit repeatedly has held that placement into administrative segregation is not a qualifying hardship. *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Consequently, this claim will be dismissed.

## *RFRA claim*

In *City of Boerne v. Flores*, 521 U.S. 507 (1997), the Supreme Court struck down RFRA as it applied to the states and their subdivisions, holding that RFRA exceeded Congress' remedial powers under Section 5 of the Fourteenth Amendment because RFRA proscribed state conduct that the First Amendment does not itself proscribe. Accordingly, Plaintiff's RFRA claims must be dismissed.

## *Retaliation claim*

Plaintiff asserts that "[t]his started over a grievance that was filed against the defendant Sheila Burnham, Chaplain, who took it upon herself to retaliate against every member of the Branch Temple #43." He alleges that the disciplinary report against him for using the suffix "El" on the records request form was initiated by Defendants Burnham and Brown. Elsewhere he alleges that he was retaliated against for exercising his freedom of religion. He alleges that Defendant Burnham "changed the Sunday school times without notice and a couple of fridays

7

due to this Civil Complaint. Other than that, the plaintiff attends every services."

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

Plaintiff does allege that he was engaged in protected conduct in practicing his religion and filing a grievance and a lawsuit. Administrative segregation is an adverse action as contemplated by the second prong of the test set forth above. *Evans v. Vinson*, 427 F. App'x 437, 446 (6th Cir. 2011); *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010). Further, Plaintiff alleges that the disciplinary segregation was imposed after he pleaded guilty to the charge of signing his name "A. Robinson-El" as his religion dictates. He also alleges that after filing his lawsuit Defendant Burnham changed the time of his services. The Court will allow the retaliation claim to go forward against Defendants Burnham and Brown in their individual and official capacities.

## *RLUIPA claim*

Under the RLUIPA,

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and

8

>    (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. 2000cc-1(a). "The threshold inquiry under RLUIPA is whether the challenged governmental action substantially burdens the exercise of religion. The burden of proving the existence of a substantial interference with a religious exercise rests on the religious adherent." *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007). On initial review, the Court will allow Plaintiff's claim under the RLUIPA to go forward against all three Defendants in their individual and official capacities.

However, state prison officials are immune from RLUIPA monetary-damages claims under the Eleventh Amendment. *Sossamon v. Texas*, ___ U.S. ___, 131 S. Ct. 1651, 1658-59 (2011) (holding that RLUIPA generally authorizes only injunctive relief and does not waive a state's sovereign immunity from suit for money damages); *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore, Plaintiff's claims for monetary damages under RLUIPA will be dismissed for seeking monetary damages from Defendants who are immune from such relief. His claims for injunctive relief under RLUIPA will be allowed to proceed past initial review.

### III. CONCLUSION

For the foregoing reasons, the Court will dismiss Plaintiff's claims on behalf of others and his claims under the First Amendment free-exercise clause, the Fifth Amendment, the Eighth Amendment, the Fourteenth Amendment, and the RFRA. The Court will allow the claims regarding retaliation and his claim under the RLUIPA for injunctive relief to go forward. In so

doing, the Court expresses no opinion on the ultimate merits of those claims. A separate Scheduling Order will be entered to govern the development of those claims.

Date:


cc: Plaintiff, *pro se*
    Defendants
4413.009