UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00045-TBR

ANTHONY L. ROBINSON                                                              Plaintiff

v.

PHILIP PARKER, *et al.*                                                        Defendants

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon the parties' competing motions for summary judgment. Plaintiff Anthony L. Robinson has filed a "Motion/Petition for Summary Judgment," (Docket No. 19), to which Defendants have responded, (Docket No. 20), and Defendants also have filed a Motion for Summary Judgment, (Docket No. 22), to which Plaintiff has responded, (Docket No. 23), and Defendants have replied, (Docket No. 24). These matters are now ripe for adjudication. For the reasons that follow, the Court will GRANT the Defendants' Motion, and, because the resolution of the Defendants' Motion is dispositive of this matter, the Court will DENY Plaintiff's competing Motion.

### BACKGROUND

Plaintiff, an inmate currently confined at the Kentucky State Reformatory (KSR), brings this *pro se* civil action against former Kentucky State Penitentiary (KSP) Warden Phillip Parker, former KSP Deputy Warden Alan Brown, former KSP Chaplain Sheila Burnham, and the Kentucky Department of Corrections (KDOC). In his original Complaint, Plaintiff alleged violations of a number of constitutional rights.

According to his Amended Complaint, Plaintiff states that he is a member of the Moorish Science Temple of America, which he describes as an "Islamic/Islamism Religion." (Docket No. 8, at 6.) Plaintiff insists that it is "his religious right to use 'El' behind his name" and that many Moorish Americans similarly use "El" or "Bey" as suffixes to their surnames. (Docket No. 8, at 4.) Plaintiff further asserts that his religion requires its adherents "to keep their birth given name and not change their names, in this case their incarcerated names." (Docket No. 8, at 6.) In essence, Plaintiff alleges that Defendants took disciplinary action against him in retaliation for exercising his religious beliefs. The specific disciplinary action taken was a 15-day assignment to disciplinary segregation following a prison disciplinary proceeding on March 20, 2012. The "Disciplinary Report Form" relative to that proceeding indicates that Plaintiff pleaded guilty to "[r]efusing or failing to obey an order based on his own admission that he did sign an[] Open Records Request with the title su[f]fix EL-I after his name, which is not his Department of Corrections reco[g]nized Court Convicted name. He was instructed not to sign his name in this fashion." (Docket No. 22-5, at 1.)

Following an initial screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), the Court dismissed the bulk of Plaintiff's Complaint but allowed two claims to proceed: (1) Plaintiff's First Amendment retaliation claim against Defendants Burnham and Brown, and (2) Plaintiff's claim for injunctive relief under the Religious Land Use and Institutionalized Persons Act against Defendants Parker, Brown, and Burnham. (Docket Nos. 12; 13.)

STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R.

Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

DISCUSSION

Defendants now move for summary judgment on Plaintiff's First Amendment retaliation claim and RLUIPA claim for injunctive relief. The Court will address each in turn.

I. **First Amendment Retaliation Claim**

In order to state a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must show that: (1) he engaged in constitutionally protected conduct, (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) there is a causal connection between elements (1) and (2), meaning that the adverse action was motivated at least in part by the plaintiff's protected conduct. *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Here, the adverse action alleged is the 15-day assignment to disciplinary segregation following the March 20, 2012, disciplinary proceeding. Defendants Burnham and Brown argue that summary judgment is warranted because Plaintiff can show neither that he was engaged in constitutionally protected conduct nor that there is a causal connection between his allegedly protected conduct and the adverse action taken against him. Burnham and Brown also argue that they are entitled to qualified immunity.

A. **Plaintiff was not engaged in protected conduct.**

The record does not indicate that Plaintiff was engaged in constitutionally protected conduct. Plaintiff's court-convicted surname is "Robinson," and, as such,

"Robinson" is the surname recognized by KDOC. The initial March 16, 2012, disciplinary write-up charged Plaintiff with "[r]efusing or failing to obey an order," after he was instructed not to sign his name in a manner inconsistent with his KDOC-recognized name. (*See* Docket No. 22-7, at 1.) On March 20, 2012, Plaintiff pleaded and was found guilty of the charged offense, and the penalty assessed was 15 days in disciplinary segregation. Despite his guilty plea, Plaintiff maintains that the disciplinary action taken and penalty assessed against him were in retaliation for his filing grievances against the prison chaplain, Defendant Burnham.

In the Court's prior Memorandum Opinion and Order entered on September 11, 2012, the Court noted that Plaintiff alleged he was engaged in two forms of protected conduct: (1) filing grievances against Defendant Burnham, and (2) signing an open records request with surname "Robinson-El-I." First, Plaintiff has submitted no evidence of any grievance filed by him against Defendant Burnham prior to the initial disciplinary write-up on March 16, 2012. In fact, the only grievances submitted by Plaintiff were either filed after both the March 16 write-up and March 20 disciplinary hearing, or were filed not by Plaintiff but by another inmate. Plaintiff appears to concede as much in his Response, stating he "is asking this honorable court to allow the grievance by another inmate a Moorish member to be allowed." (Docket No. 23-1, at 3.) Thus, there is no evidence that Plaintiff, himself, was engaged in any protected conduct by filing grievances against Defendant Burnham.

Second, by signing an open records request, Plaintiff was not engaged in the exercise of his religion—he was simply engaged in filing a records request. In dismissing Plaintiff's First Amendment free exercise claim, this Court noted that "it is

established in this circuit that [a prisoner] has no 'constitutional right to dictate how prison officials keep their prison records.'" *Spies v. Voinovich*, 173 F.3d 398, 406 (6th Cir. 1999) (quoting *Imam Ali Abdullah Akbar v. Canney*, 634 F.2d 339, 340 (6th Cir. 1980)). In *Imam Ali Abdullah Akbar*, the Sixth Circuit held that: "As we see this issue, the present question of name change usage relates to prison administration. Absent unusual allegations such matters are for state prison officials to resolve. Intervention by the federal courts should only be in the very unusual case." 634 F.2d at 340. *Imam Ali Abdullah Akba* is largely on point with the issue presently before the Court. In that case, a prisoner had adopted the Sunni Muslim faith and changed his name from Ronald Scheels to Ali Abdullah Akbar. *Id.* at 340. The court began by noting that the issue was not whether a prisoner had a right to change his name but instead "whether prison officials must change all their records to reflect the newly adopted name of a prisoner who has changed his name upon acceptance of the Sunni Muslim religion." *Id.* at 340. The court answered that question "No" and affirmed the district court's ruling that there was no constitutional basis to require prison officials to change their records whenever a prisoner chooses to change his name. *Id.*

Though Plaintiff here does not ask that KDOC change its records to reflect the addition of the suffix "El," he effectively asks that he be allowed to use that suffix when signing his name on official prison forms. But Plaintiff has not sought to formally change his name. (Indeed, he essentially presents himself as faced with a catch-22, asserting that his religion requires him to use the suffix "El" but also prohibits him from formally changing his name.) Much like the Sixth Circuit did in *Imam Ali Abdullah*

*Akba*, this Court sees this issue as relating primarily to prison administration. *See id.* As the district court in that case reasoned:

> Prison administration presents unique difficulties and the burden imposed on the plaintiff in the instant case by the defendants' use of his non-Muslim name clearly is outweighed by the administrative difficulties and confusion which would confront prison officials in attempting to amend commitment papers of every prisoner who embraces the Islamic faith and changes his name.

*Id.* Accordingly, insofar as Plaintiff argues he was engaged in religious conduct by signing an open records request with the suffix "El" affixed to his name, the Court finds no constitutional basis to consider such conduct as protected under the First Amendment. For these reasons, Plaintiff's First Amendment retaliation claim fails as a matter of law.

### B. Plaintiff has not established the requisite causal connection.

Furthermore, even assuming Plaintiff had shown that he was engaged in protected conduct, he nonetheless has failed to establish a causal connection between that conduct and the adverse action suffered. To show causation in a retaliation claim, a plaintiff must show (1) that the adverse action was proximately caused by an individual defendant's acts, and (2) that the defendant taking those acts was "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *King*, 680 F.3d at 695 (quoting *Thaddeus-X*, 175 F.3d at 386) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005)). Both the Sixth Circuit and the lower courts of this circuit have recognized that, with respect to causation, "retaliation is 'easy to allege' and 'can seldom be demonstrated by direct evidence.'" *Catanzaro v. Mich. Dep't of Corr.*, 2011 WL 7113245, at *3 (6th Cir. Dec. 16, 2011) (quoting *Huff v. Rutter*,

2006 WL 2039983, at *7 (W.D. Mich. July 19, 2006)). The Sixth Circuit has noted, however, that "conclusory allegations of temporal proximity are not sufficient to show retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (citing *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001); *Kensu v. Haigh*, 87 F.3d 172, 175-76 (6th Cir. 1996)). "A claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred." *Desmone v. Adams*, 1998 WL 702342, at *3 (6th Cir. Sept. 23, 1998). Accordingly, "bare allegations of malice would not suffice to establish a constitutional claim." *Thaddeus-X*, 175 F.3d at 399. Then, "[o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Desmone*, 1998 WL 702342, at *3. For several reasons, the Court finds that Plaintiff has failed to establish the causation element of his retaliation claim.

First, the record reflects that Plaintiff pleaded and was found guilty of the charge of refusing or failing to obey an order. The Sixth Circuit addressed an analogous scenario in *Jackson v. Madery*, a case in which a prisoner alleged that false disciplinary reports were filed against him in retaliation for his engaging in protected conduct. 158 F. App'x 656, 662 (6th Cir. 2005). There, the Sixth Circuit held that "[a] finding of guilty based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Id.* (second alteration in original) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)). Here, there was certainly evidence to support the

charges, and there was a finding of guilty based on Plaintiff's guilty plea. For this reason, Plaintiff cannot establish the causation element of his retaliation claim.

Second, Plaintiff has offered no evidence that Defendant Burnham was in any way involved in the March 16 disciplinary write-up or March 20 disciplinary hearing. Defendants, on the other hand, have offered evidence that Burnham did not bring the open records request to Defendant Brown's attention, that Burnham was not involved in the March 16 write-up or March 20 disciplinary hearing, and that Burnham was not a member of the three-person adjustment committee panel that found Plaintiff guilty. For this reason also, at least with respect to Burnham, Plaintiff cannot establish the causation element of his retaliation claim.

Finally, even assuming Plaintiff had met his burden of showing that he was engaged in protected conduct and that his protected conduct was a motivating factor behind any harm, Defendants have satisfied their burden of coming forward with evidence that they would have taken the same action in the absence of the protected activity. The record reflects that the decision to charge Plaintiff was simply due to his refusal or failure to obey an order. The rule requiring prisoners to use their recognized KDOC names was not specific to Plaintiff or members of his religion and had long been the policy of the institution. Defendants have offered evidence that regardless of a prisoner's reason for attempting to use another name, the directive and penalty for failure to obey an order would have been the same. For this reason also, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

\* \* \*

Based on the foregoing analysis, the Court finds that Plaintiff has failed to establish two of the three required elements for a First Amendment retaliation claim.

Because this claim fails as a matter of law, summary judgment is warranted, and the Court need not address whether Defendants would be entitled to qualified immunity.

## II. RLUIPA Claim

For his remaining claim, Plaintiff seeks injunctive relief pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA), which provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling government interest; and
>
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. 2000cc-1(a).

### A. Plaintiff's RLUIPA Claim was mooted by this transfer to KSR.

When Plaintiff's Complaint and Amended Complaint were filed, he was incarcerated at the KSP in Eddyville, Kentucky. (*See* Docket Nos. 1; 8.) Plaintiff since has been transferred to the KSR in LaGrange, Kentucky. (*See* Docket No. 17.) The law of this circuit is clear that a prisoner's claim for injunctive relief under the RLUIPA may be mooted by his transfer to a different facility. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (finding an inmate's RLUIPA claim for injunctive relief, which was targeted at a particular institution's policies and procedures and not those of the state's department of corrections as a whole, mooted by his transfer out of that facility); *Berryman v. Granholm*, 343 F. App'x 1, 5 (6th Cir. 2009) (holding, in regard to inmate's RLUIPA claim for injunctive relief, that "the district court correctly held that because

[the inmate] had been transferred from the St. Louis facility, the claim had become moot"); *Kensu*, 87 F.3d at 175 (finding that a prisoner's request for injunctive relief from inspection of his mail was moot because he had been transferred to a different facility that did not search his mail). Here, Plaintiff's RLUIPA claim is targeted specifically at the policies and procedures of the KSP, and the Court allowed this claim to proceed against the three named Defendants, none of who remain in their former positions at the KSP. As such, his RLUIPA claim for injunctive relief has been mooted by his transfer to the KSR.

      **B.**    **Even if Plaintiff's claim was not mooted by his transfer, he is not entitled to relief under the RLUIPA.**

The purpose of the RLUIPA is to "protect[] institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). "However, 'prison security is a compelling state interest'" and "deference is due to institutional officials' expertise in this area.'" *Hayes v. Tennessee*, 424 F. App'x, 554 (6th Cir. 2011) (quoting *Cutter*, 544 U.S. at 725 n. 13). Accordingly, the RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter*, at 722. Defendants argue that Plaintiff is not entitled to relief under the RLUIPA because no substantial burden is imposed on the exercise of his religion. Defendants further argue that to the extent any challenged practice does burden Plaintiff's religious exercise, that burden furthers a compelling government interest and is the least restrictive means of furthering that interest. (Docket No. 22-1, at 12-15.) The Court agrees.

"An inmate asserting a claim under the RLUIPA must first produce prima facie evidence demonstrating that his religious exercise was substantially burdened." *Hayes*, 424 F. App'x at 554; *see also Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010); *Haight v. Thompson*, 2013 WL 1092969, at *10 (W.D. Ky. Mar. 15, 2013). Thus, as this Court previously noted: "The threshold inquiry under RLUIPA is whether the challenged governmental action substantially burdens the exercise of religion. The burden of proving the existence of a substantial interference with a religious exercise rests on the religious adherent." (Docket No. 11, at 9 (quoting *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007)).) The RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Although not specifically defined by the RLUIPA, the Sixth Circuit has characterized a "substantial burden" as one that places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Hayes*, 424 F. App'x at 555; *Barhite*, 377 F. App'x at 511; *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). In *Living Water Church*, the Sixth Circuit explained:

> In the "Free Exercise" context, the Supreme Court has made clear that the "substantial burden" hurdle is high . . . .
> In short, while the Supreme Court generally has found that a government's action constituted a substantial burden on an individual's free exercise of religion when that action forced an individual to choose between "following the precepts of her religion and forfeiting benefits" or when the action in question placed "substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Sherbert v. Verner*, 374 U.S. 398, 404 (1963); *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707 717–18 (1981), it has found no substantial burden when, although the action encumbered the practice of religion, it did not pressure the individual to violate his or her religious beliefs. *See Lyng v. Nw.*

> *Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (2007);
> *Braunfeld v. Brown*, 366 U.S. 599, 605–06 (1961).

*Id.*

Here, Plaintiff has not shown that a substantial burden is imposed on his right to freely exercise his religious beliefs by the prison requiring him to sign prison forms using his official KDOC-recognized name. There is no evidence that the KSP policy requiring inmates to use their court-convicted name when signing records requests somehow pressured Plaintiff to violate his beliefs. While he may desire to be referred to and recognized by the name "Robinson-El" or "Robinson-El-I," he has at best shown an incidental burden on the practice of his religious beliefs. As such, this burden is insufficient to meet the "substantial burden" threshold of the RLUIPA.

Still, even assuming Plaintiff had shown that the burden was substantial, he would not be entitled to relief under the RLUIPA. Once a plaintiff makes the requisite prima facie showing, the burden then shifts to the state "to prove that any substantial burden on the inmate's exercise of his religious beliefs was 'in furtherance of a compelling governmental interest' and imposition of the substantial burden on the inmate is 'the least restrictive means of furthering that compelling governmental interest.'" *Hayes*, 424 F. App'x at 555 (quoting 42 U.S.C. § 2000cc–1(a)(1)–(2)) (citing 42 U.S.C. §§ 2000cc–2(b)). Here, the Court is satisfied that Defendants have met their burden of persuasion.

As Defendants point out, requiring inmates to use the name under which they were convicted furthers the state's interest both in terms of prison security and prison administration. Prison record-keeping is not limited to records of inmates' open records requests. On the contrary, prisons maintain an array of records for their inmates,

including records of grievances, disciplinary issues, inmate classification, property records, mail logs, medical records, and so on. Requiring all administrative matters to be handled and addressed by the name under which an inmate was convicted assists in maintaining accurate and complete records for all concerned, which in turn helps ensure that the prison's security needs are met as well. To allow inmates to use varying names as they please would undoubtedly compromise the prison's ability to maintain order and security. *See Cutter*, 544 U.S. at 722 ("We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety."); *Hayes*, 424 F. App'x at 550 ("As maintaining security, order, and discipline are essential goals of a corrections system, prison officials are accorded wide latitude in the adoption and application of prison policies and procedures."). Accordingly, the Court is satisfied that Defendants have shown that any burden imposed furthers a compelling government interest.

Finally, Defendants must show that any burden imposed is through the least restrictive means of furthering the government's compelling interest. Defendants have offered evidence that while prison policy requires inmates to use their court-convicted names, inmates are permitted to go through the process of a legal name change, after which, an inmate is allowed to use his new legal name. Defendants insist that "the rule is not that an inmate is not allowed to use a name based upon religious preference, but rather that an inmate must use his legal name and that if an inmate legally changes his name, his new name will be recognized." (Docket No. 22-1, at 14.) Although Plaintiff insists that his religious beliefs also prohibit him from legally changing his name, the Court is satisfied that the Defendants have shown that any burden imposed on Plaintiff

is through the least restrictive means of furthering the state's compelling interests in maintaining administrative order and institutional security.

For these reasons, the Court finds that, even if not mooted by his transfer from KSP to KSR, Plaintiff's RLUIPA claim nonetheless fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's remaining First Amendment retaliation claim and RLUIPA claim for injunctive relief both fail as a matter of law. As such, summary judgment is appropriate. Therefore, having considered the parties' respective arguments and being otherwise sufficiently advised;

IT IS HEREBY ORDERED that Plaintiff's "Motion/Petition for Summary Judgment," (Docket No. 19), is DENIED;

IT IS HEREBY FURTHER ORDERED that Defendants' Motion for Summary Judgment, (Docket No. 22), is GRANTED. An appropriate Order of final judgment will issue concurrently with this Opinion.

IT IS SO ORDERED.

Date:


cc: Counsel for Defendants

　　　Anthony L. Robinson, *pro se*